UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JACOB GRONSKI

          Plaintiff,                       Case No. 1:24-cv-10970

v.                                                   Honorable Thomas L. Ludington
                                                     United States District Judge
INCONTACT, INC., and JOSE AGUILERA

          Defendants.
_____/

**OPINION AND ORDER DENYING DEFENDANT AGUILERA'S MOTION TO DISMISS**

In April 2024, Plaintiff Jacob Gronski sued his former employer, Defendant InContact Inc., and his former supervisor, Defendant Jose Aguilera, for sex discrimination in violation of Michigan's Elliott-Larsen Civil Rights Act. Defendant InContact is a Delaware software corporation with a principal place of business in Utah. But, at all relevant times, Plaintiff worked for InContact remotely from his residence in Michigan and Aguilera worked remotely from his residence in Arizona.

Defendant Aguilera filed a motion to dismiss for lack of personal jurisdiction under Civil Rule 12(b)(2). But Plaintiff responded by emphasizing that he and Aguilera had regular, remote one-on-one meetings each week, during which Aguilera oversaw Plaintiff's work in Michigan. Indeed, Plaintiff further avers that Aguilera received a commission on each software sale Plaintiff made while working in the state. These specific facts—when construed in a light most favorable to Plaintiff—support *a prima facie* case that this Court possesses specific personal jurisdiction over Defendant Aguilera. So Defendant Aguilera's Motion will be denied.

I.

Plaintiff Jacob Gronski began working as a healthcare "Solutions Account Manager" for Defendant InContact, Inc. ("InContact")—a software solutions company—in October 2022. ECF No. 4. at PageID.21. Although InContact was incorporated in Delaware and had a principal place of business in Utah, Plaintiff worked exclusively as a remote employee, from his home in Saginaw, Michigan. *Id.* at PageID.20. Beginning in August 2023, Plaintiff was supervised by Defendant Jose Aguilera, who also worked exclusively as a remote employee from his home in Arizona. *Id.* at PageID.21; ECF No. 22-1 at PageID.151.

At the beginning of his employment, Plaintiff claims he received "satisfactory or above satisfactory reviews" from Defendant Aguilera and other InContact managers. *Id.* But, at some unspecified time, Defendant learned that Plaintiff is gay and "was in a relationship with another male." *Id.* And, "once Defendants learned that Plaintiff was [gay]," they allegedly treated him differently than other similarly situated employees. *Id.* Specifically, Plaintiff alleges that, "in late November 2023," Defendant Aguilera" interrogated Plaintiff about his "planned . . . vacation, repeatedly asking" where Plaintiff was going and who he was traveling with. *Id.* at PageID.21–22. When Plaintiff responded that he was traveling to the Bahamas with his then-boyfriend, Defendant Aguilera allegedly "became despondent, cold, or otherwise removed from the conversation." *Id.* at PageID.22. After that, Plaintiff claims that Defendant Aguilera "distanc[ed] himself" from supervising Plaintiff, and would not respond to Plaintiff's questions. ECF No. 21 at PageID.138.

Separately, Plaintiff alleges that, after learning Plaintiff was gay, Defendants collectively reassigned one of his large volume healthcare clients to another InContact employee who, notably, did not work within InContact's healthcare vertical like Plaintiff. ECF No. 4 at PageID.23. And

the accounts Defendants allegedly assigned to Plaintiff in return were "bad." *Id.* (alleging these clients had expressed interest in closing their accounts with InContact or were in default). Plaintiff alleges Defendants orchestrated this "client shuffle" to diminish Plaintiff's sales, reduce his commission, and "create a pretextual purpose for [his] ultimate termination" on March 13, 2024. *Id.* The Parties dispute who terminated Plaintiff's employment. Plaintiff alleges he was "ultimately terminated by [Defendant] Aguilera." ECF No. 20 at PageID.128. But Defendant Aguilera has filed a sworn affidavit averring he "did not make the decision to terminate" Plaintiff, did "not have the authority to hire or terminate employees," and that Plaintiff was terminated by InContact Vice President Justin O'Brien. ECF No. 17-2 at PageID.117.

Regardless, less than two months after his termination, Plaintiff sued Defendants InContact and Aguilera for discriminating against him on the basis of his sexual orientation, in violation of Michigan's Elliott-Larsen Civil Rights Act, MICH. COMP. LAWS § 37.2102(1).[1] *See* ECF Nos. 1; 4. On June 21, 2024, Defendant Aguilera filed a motion to dismiss for lack of personal jurisdiction under Civil Rule 12(b)(2). ECF No. 17.

## II.

Under Civil Rule 12(b)(2), a defendant may move for dismissal for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). But these motions can be procedurally puzzling. Rule 12(b)(2) motions to dismiss inherently involve burden shifting:

> The plaintiff must first make a prima facie case, which can be done merely through the complaint. The burden then shifts to the defendant, whose motion to dismiss must be properly supported with evidence. Once the defendant has met the burden,

---

[1] Plaintiff filed his original complaint in April 2024 against Defendants Aguilera, Nice Systems, Inc.; Nice Cxone; and Nice Systems, Ltd. ECF No. 1. On May 2, 2024, before any answers were filed, Plaintiff filed his operative, Amended Complaint and added Defendant InContact. *See* ECF No. 4. And, on May 23, 2024, Plaintiff voluntarily dismissed Nice Systems, Inc.; Nice Cxone; and Nice Systems, Ltd., ECF No. 9.

> it returns to the plaintiff, who may no longer stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction.

*Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504 (6th Cir. 2020) (citations omitted). District courts may proceed through these three shifting stages in three separate ways: "it may decide the motion upon the [parties' pleadings and] affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). Far from trivial, the district court's choice "in how it resolves a 12(b)(2) motion" directly impacts the plaintiff's burden. *Id.*; *see also Malone*, 965 F.3d at 505.

If the court conducts an evidentiary hearing "and the defendant's motion is properly supported with evidence, the plaintiff must overcome it by a preponderance of the evidence." *Malone*, 965 F.3d at 505. But when the court resolves the motion on the papers, the Plaintiff need only show a *prima facie* case that personal jurisdiction exists. *Id.*; *see also Peters Broad. Eng'g, Inc. v. 24 Cap., LLC*, 40 F.4th 432, 441 (6th Cir. 2022); *Schneider v. Hardesty*, 669 F.3d 693, 697 (6th Cir. 2012); *Theunissen*, 935 F.2d at 1458. Indeed, if the Court resolves a well-supported 12(b)(2) motion to dismiss on the papers, the plaintiff's burden is "relatively slight." *Malone*, 965 F.3d at 505 (quoting *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988)). Dismissal is proper "only if *all* the specific facts" that "the plaintiff . . . alleges collectively fail to state a *prima facie* case for jurisdiction." *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997) (emphasis in original) (internal quotations omitted). And the court views all pleadings and affidavits "'in a light most favorable to the plaintiff,' without weighing 'the controverting assertions of the party seeking dismissal.'" *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 847 (6th Cir. 2017) (quoting *Theunissen*, 935 F.2d at 1459). This latter point is crucial. Although courts can consider defense affidavits when assessing whether the defendant has sufficiently supported their

rule 12(b)(2) motion to dismiss in the second stage of the burden-shifting framework, the Sixth Circuit instructs district courts resolving 12(b)(2) motions on the papers to "ignore" these affidavits to the extent they squarely contradict the specific facts the plaintiff relies on to support their *prima facie* proofs. *Malone*, 965 F.3d at 505–06 (finding district court erred by considering and crediting—before any evidentiary hearing—defense affidavit that contradicted the specific facts plaintiff alleged to show personal jurisdiction); *see also Serras*, 875 F.2d at 1214 (explaining "[a]ny other rule would employer a defendant to defeat personal jurisdiction merely by filing a written affidavit contradicting jurisdictional facts alleged by a plaintiff").

### III.

This Court declines to hold a pretrial evidentiary hearing and exercises its discretion to decide Defendant Aguilera's Motion on the papers. Plaintiff satisfied his initial burden of showing a *prima facie* case of personal jurisdiction over Defendant Aguilera by alleging, in his Amended Complaint, that Defendants' alleged discriminatory client shuffle, termination, and disparate treatment "happened in . . . Michigan," despite the allegation that InContact and Aguilera resided in other states. ECF No. 4 at PageID.20. Indeed, this catch-all allegation seemingly applies to Plaintiff's separate allegation that Defendant Aguilera had "one-on-one meetings" with Plaintiff concerning his work, but became distant and nonresponsive after learning Plaintiff was gay. *Id.* at PageID.22.

But Defendant Aguilera's Motion to Dismiss was well supported with a sworn declaration, in which he avers (1) he did not "make the decision" to terminate Plaintiff's employment and has no authority to terminate InContact employees; (2) he "never visited Michigan" and never contacted Plaintiff in Michigan aside from "occasional telephone calls, text messages, emails, or Microsoft Teams messages." ECF No. 17-2 at PageID.117–18. So the burden shifted back to

Plaintiff who could "no longer stand on his pleadings" and, instead, was required to "set forth specific facts" showing a *prima facie* case of jurisdiction. *Malone*, 965 F.3d at 504. Plaintiff responded that, contrary to Defendant Aguilera's assertions, (1) Defendant Aguilera "ultimately terminated" Plaintiff's employment with InContact; and (2) the one-on-one meetings between Plaintiff and Aguilera were more than "occasional" and instead occurred on a regular, "weekly" basis throughout "most of [Plaintiff's] employment with [InContact]." ECF Nos. 20 at PageID.128; 21 at PageID.138. Moreover, Plaintiff additionally alleged in his sworn affidavit that 50% of Defendant Aguilera's salary was attributable to commissions he received from the sales of the employees he supervised, including Plaintiff. ECF No.21 at PageID.138; *see also* ECF No. 20 at PageID.129–30.

The issue, therefore, is whether, construed in a light most favorable to Plaintiff, these "specific facts" show a *prima facie* case of this Court's personal jurisdiction over Defendant Aguilera. But Personal jurisdiction can be "general" or "specific." *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005). Each type of personal jurisdiction will be discussed in turn.

### A. General Personal Jurisdiction

General personal jurisdiction exists when "the defendant's affiliations with the forum state are so continuous and systematic as to render the defendant essentially at home there." *Malone*, 965 F.3d at 501. Under applicable Michigan law,[2] a court has general personal jurisdiction over a defendant when the defendant is either (1) present in the state when process is served; (2) domiciled in the state when process is served; or (3) otherwise consents to personal jurisdiction. MICH. COMP. LAWS § 600.701.

---

[2] Federal courts ordinarily "must apply the law of the forum state to determine whether it may exercise personal jurisdiction over a defendant." *Miller v. AXA Winterthur Ins. Co*., 694 F.3d 675, 678 (6th Cir. 2012).

Plaintiff does not argue that this Court has general personal jurisdiction over Defendant Aguilera. *See* ECF No. 20. Nor could he. As alleged in Plaintiff's Amended Complaint, Defendant Aguilera is domiciled in Arizona, not Michigan. ECF No. 4 at PageID.20. Plaintiff personally served Defendant Aguilera in Arizona, not Michigan. ECF No. 16 at PageID.82. And Defendant Aguilera has not otherwise consented to this Court's jurisdiction. Plaintiff has not shown even a *prima facie* case that this Court has *general* personal jurisdiction over Defendant Aguilera.

### B. Specific Personal Jurisdiction

But Plaintiff has shown a *prima facie* case that this Court has *specific* personal jurisdiction over Defendant Aguilera. Unlike general personal jurisdiction, which centers on a defendant's affiliation with the forum state, specific or limited personal jurisdiction centers on the forum state's affiliation with the underlying controversy. *See BDD Grp., LLC v. Crave Franchising, LLC*, No. 24-CV-10035, 2024 WL 4231195, at *2 (E.D. Mich. Sept. 18, 2024). For this Court to exercise specific personal jurisdiction over Defendant Aguilera, two conditions must be met: (1) Michigan's long-arm statute must authorize jurisdiction, and (2) if it does, exercising jurisdiction must comply with the Due Process Clause of the Fourteenth Amendment.[3] *Sullivan v. LG Chem, Ltd.*, 79 F.4th 651, 660 (6th Cir. 2023).

### 1. Michigan's Long Arm Statute

Plaintiff has shown specific facts that suggest, *prima facie*, that this Court's specific personal jurisdiction over Defendant Aguilera accords with Michigan's Long Arm Statute. Among

---

[3] Plaintiff merges these two inquiries, consistent with this Court's precedent from the late 1990s. ECF No. 20 at PageID.132 (citing *Neighbors v. Penske Leasing, Inc.*, 45 F. Supp. 2d 593, 597 (E.D. Mich. 1999). But the Sixth Circuit recently clarified that "Michigan's interpretation of its long-arm statute requires a separate analysis from the [Fourteenth Amendment] Due Process Clause[.]" *Sullivan v. LG Chem, Ltd.*, 79 F.4th 651, 664–66 (6th Cir. 2023) (discussing *Green v. Wilson*, 565 N.W. 2d 813 (Mich. 1997)).

other circumstances, Michigan's Long Arm Statute expressly auhtorizes specific personal jurisdiction over individuals who "transact[] or conduct[] business within the state." MICH. COMP. LAWS § 600.705(1). And this provision "is satisfied when a defendant conducts 'even the slightest act of business in Michigan[.]'" *HPIL Holding, Inc. v. Zhang*, No. 1:23-CV-12050, 2024 WL 2306358, at *23 (E.D. Mich. May 21, 2024) (quoting *Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 906 (6th Cir. 1988)); *see also Sifers v. Horen*, 188 N.W.2d 623, 624, n.2 (Mich. 1971).

As alleged in the Amended Complaint and Plaintiff's affidavit, Defendant Aguilera supervised Plaintiff's work in Michigan for at least nine months throughout weekly "one-on-one meetings." *See* ECF Nos. 4 at PageID.20; *compare* ECF No. 21 at PageID.138 (alleging supervision lasted for "most of [Plaintiff's] employment" with InContact) *with* ECF No. 22-1 at PageID.151 (alleging supervision lasted from "August of 2023" through Plaintiff's March 13, 2024 termination). Moreover, Plaintiff's affidavit states that 50% of Defendant Aguilera's salary stemmed from commissions he received from the sales of the employees he supervised, including the sales Plaintiff made while working in Michigan.[4] ECF Nos. 21 at PageID.138; 20 at

---

[4] Defendant Aguilera avers in his Second Affidavit that none of Plaintiff's customers were based in Michigan, ECF No. 22-1 at PageID.151, such that Defendant Aguilera's commission cannot constitute business conduct within the state. ECF No. 22 at PageID.142–43. But this contravening assertion cannot be considered in analyzing whether Plaintiff has shown a *prima facie* case of personal jurisdiction. *Malone*, 965 F.3d at 505. Moreover, even if it could be considered, Defendant Aguilera's reliance on this point is misplaced. Michigan Courts are clear that as used in the state's long-arm statute, business conduct includes both the "purchase *and sale* of goods in an attempt to make a profit." *See Luckenbach Ziegelman Architects v. Margulies*, No. 313473, 2014 WL 1515275, at *4 (Mich. Ct. App. Apr. 17, 2014) (quoting *Oberlies v. Searchmont Resort, Inc.*, 633 N.W.2d 408, 413 (2001). In this way, it matters not that Plaintiff's purchasers were located outside of Michigan, because Plaintiff's *sales* undoubtedly occurred there. And Defendant Aguilera does not dispute that he directly profited from Plaintiff's sales, such that limited personal jurisdiction is proper under Michigan's Long Arm Statute. *See W.H. Froh, Inc. v. Domanski*, 651 N.W.2d 470, 477 (Mich. Ct. App. 2002) (finding out-of-state defendant conducted business in Michigan when he worked with in-state Plaintiff to develop business relationship with out-of-state third party company).

PageID.129–30. These facts sufficiently show a *prima facie* case of limited personal jurisdiction under MICH. COMP. LAWS § 600.705(1). *See Kloosterman v. Gorman*, No. 317698, 2014 WL 7157422, at *5 (Mich. Ct. App. Dec. 16, 2014) (noting "transaction" as used in Michigan's long-arm statute need only "relate to some commercial behavior"); *See Luckenbach Ziegelman Architects v. Margulies*, No. 313473, 2014 WL 1515275, at *4 (Mich. Ct. App. Apr. 17, 2014) ("'Transact' is defined as to carry on or conduct . . . [and] '[b]usiness' is defined as an occupation, profession, . . . trade, . . . purchase [or] sale of goods in attempt to make a profit" (internal quotations omitted)); *Oberlies v. Searchmont Resort, Inc.*, 633 N.W.2d 408, 413 (2001) (same).

### 2. Fourteenth Amendment Due Process

Separate from Michigan's long-arm statute, the Fourteenth Amendment Due Process Clause requires that plaintiffs establish a defendant's minimum contacts with the forum state sufficient to comport with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The Sixth Circuit uses a three-pronged test to determine if minimum contacts exist between a defendant and the forum:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*SFS Check, LLC v. First Bank of Delaware*, 774 F.3d 351, 356 (6th Cir. 2014) (internal quotations omitted). Each requirement will be addressed in turn.

#### a.

The first requirement—purposeful availment—is "arguably the most important." *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007); *see also*

*Theunissen*, 935 F.2d at 1460. A defendant purposefully avails himself or herself of a forum "by engaging in activity that should provide fair warning that he [or she] may have to defend a lawsuit there[.]" *Youn v. Track, Inc.*, 324 F.3d 409, 418 (6th Cir. 2003). But defendants do *not* purposefully avail themselves of the forum through "'random,' 'fortuitous' or 'attenuated' contacts[,] or []the 'unilateral activity of another party or third person." *Air Prods.*, 503 F.3d at 550 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

The specific facts asserted by Plaintiff show, *prima facie*, that Defendant Aguilera's actions should have given him a fair warning that he may have to defend a lawsuit in Michigan. As alleged, Defendant Aguilera supervised Plaintiff's work in Michigan for at least nine months of his year-and-a-half tenure with InContact through remote one-on-one meetings. *See* ECF Nos. 4 at PageID.20–22; 21 at PageID.138. And, far from "random," these meetings were deliberate, regular, and occurred every week. *Id.* Indeed, these meetings include those in which Plaintiff alleges Defendant Aguilera became "despondent, cold, and otherwise removed from the conversation" and began treating Plaintiff "differently" after learning Plaintiff was gay. ECF No. 4 at PageID.21–22. Moreover, Plaintiff has sworn—in response to Defendant Aguilera's Motion to Dismiss—that 50% of Aguilera's pay stemmed from commissions he received from the sales of the employees he supervised, including Plaintiff. ECF Nos. 20 at PageID.129–30; 21 at PageID.138. These specifically alleged facts suggest Defendant Aguilera purposefully availed himself of this forum. *See*, *e.g.*, *Trio Realty, Inc. v. Eldorado Homes, Inc.*, 350 F. Supp. 2d 322, 332 (D.P.R. 2004) (finding out-of-state defendants purposefully availed themselves of the forum because they "derive[d] economic benefits" from in-forum activities, which included "continuous phone calls" to "engage[] in a business relationship" with in-state plaintiff).

Defendant Aguilera argues that this Court lacks jurisdiction because he has "never been to Michigan for any reason." ECF No. 17 at PageID.99–100. But that doesn't matter. It is well settled that defendants can purposefully avail themselves of a forum without ever stepping foot in the state. *See Burger King*, 471 U.S. at 476; *see also HPIL Holding*, 2024 WL 2306358, at *23 (noting physical presence is inapposite to purposeful availment). Indeed, as early as 2007, the Sixth Circuit recognized that, like here, a defendant purposefully avails themselves of the forum state by creating a "substantial connection" with the forum or "continuing obligations" with its residents. *Air Prods.*, 503 F.3d at 551 (quoting *Burger King*, 471 U.S. at 476).

Defendant Aguilera then cites a 1997 Sixth Circuit case for the proposition that "occasional emails, phone calls, and . . . messages" to Plaintiff while Plaintiff worked in Michigan fall short of purposeful availment. ECF No. 17 at PageID.99–100 (citing *Kerry Steel*, 106 F.3d at 151). But this argument is misplaced as a matter of fact and law. First, construing all specifically alleged facts in Plaintiff's favor, Defendant Aguilera's contact with Plaintiff, and supervision of his work in Michigan, were more than "occasional." *See* ECF Nos. 4 at PageID.20–22; 21 at PageID.138. Second, remote work has skyrocketed since 1997. *See* Sabrina Pabilonia and Jill Redmond, *The Rise in Remote Work Since the Pandemic and its Impact on Productivity*, U.S. BUREAU OF LAB. STAT. (Oct. 31, 2024), https://www.bls.gov/opub/btn/volume-13/remote-work-productivity.htm #:~:text=According%20to%20the%20American%20Community,of%20remote%20workers%20fell%20slightly. (noting COVID-19 caused "phenomenal increases in remote work" and that the "majority" of the software service industry worked remotely in 2021). [https://perma.cc/XH7T-7SNC]. And with this rise in remote work has come corresponding increased recognition from and within the Sixth Circuit that out-of-state defendants purposefully avail themselves of the forum through "ongoing"—as opposed to isolated or "one shot"—remote work relationships with an in-

state plaintiff. *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 551 (6th Cir. 2016) (internal quotations omitted); *see also Dugger v. Honeywell Int'l, Inc.*, No. 1:21-CV-00892, 2021 WL 5961624, at *8 (N.D. Ohio Dec. 16, 2021). As discussed, Plaintiff has sufficiently alleged Defendant Aguilera had an ongoing, regular connection with Plaintiff and supervised his work in Michigan through at least 40 weekly meetings throughout Plaintiff's tenure with InContact. ECF Nos. 4 at PageID.20–22; 21 at PageID.138. Federal Courts have found purposeful availment satisfied in similar circumstances. *See, e.g.*, *AlixPartners*, 836 F.3d at 548 (finding purposeful availment and personal jurisdiction satisfied when out-of-state defendant had "semi-regular" contact with his supervisors in the forum state through emails and phone calls); *Morton v. Advance PCS, Inc.*, No. 3:04CV278, 2006 WL 2222683, at *2 (E.D. Tenn. Aug. 2, 2006) (same, when out-of-state defendant supervisor had remote "weekly one-on-one-conference calls" with in-state defendant HR official, and the two defendants allegedly jointly terminated plaintiff's employment); *Dugger*, 2021 WL 5961624, at *9 (N.D. Ohio Dec. 16, 2021) (same, when out-of-state defendant maintained an ongoing, yet remote, "supervisory relationship" with plaintiff); *Wallens v. Milliman Fin. Risk Mgmt. LLC*, 509 F. Supp. 3d 1204, 1216 (C.D. Cal. 2020) (same, when out-of-state defendant remotely supervised in-state plaintiff).

### b.

The second due process personal jurisdiction requirement—whether Plaintiff's action arises from or relates to Defendant Aguilera's contacts with Michigan—is similarly satisfied. "Although it's been said many times, many ways," NAT KING COLE, THE CHRISTMAS SONG (Capital Studios, 1961), the Sixth Circuit has articulated the standard for this requirement as follows:

> [W]hether the causes of action were "made possible by" or "lie in the wake of" the defendant's contacts, *Lanier v. American Bd. of Endontics*, 843 F.2d 901, 909 (6th

> Cir. 1988), or whether the causes of action are "related to" or "connected with" the defendant's contacts with the forum state, *Youn*, 324 F.3d at 419 (quoting *Third Nat. Bank in Nashville v. WEDGE Group Inc.*, 882 F.2d 1087, 1091 n. 2 (6th Cir.1989)). In addition . . . this standard [is] "lenient[]" and . . . the cause of action need not "formally" arise from defendant's contacts. *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir.2002).

*Air Prods.*, 504 F.3d at 544 (cleaned up).

Read in a favorable light, Plaintiff alleges Defendants discriminated against him based on his sexual orientation in at least three ways: (1) Defendants treated Plaintiff differently after learning he was gay; (2) Defendants swapped Plaintiff's high-performing health care clients with "bad" clients who had already expressed interest in ceasing business with InContact to decrease Plaintiff's sales and commissions; and (3) Defendants ultimately terminated his employment on the basis of sex, and cited his post-client swap "poor performance" as pretext. *See generally* ECF No. 4. As alleged, the first disparate treatment allegation formally arises from Defendant's weekly supervision meetings while Plaintiff was in Michigan, during which Plaintiff expressly avers Defendant Aguilera *himself*—as opposed to Defendant Aguilera *and* Defendant InContact—became "despondent, cold, [] removed," tardy, and unresponsive after learning Plaintiff was gay. *Id.* at PageID.22. The latter two discrimination allegations—the "client shuffle" and the pretextual termination—are, at the very least, sufficiently "connected with" or lie "in the wake of" Defendant's weekly oversight of Plaintiff's work and performance to satisfy this "lenient" standard. *See Dugger*, 2021 WL 5961624, at *8, n. 6 (concluding plaintiff's claims—including discriminatory termination and diverted sales opportunities—readily "ar[o]se from" out-of-state defendant's contacts with the forum, namely regular remote supervision of plaintiff's work and performance).

Defendant Aguilera avers he "did not make the decision to terminate" Plaintiff's employment, ECF No. 17-2 at PageID.117, such that Plaintiff's cause of action does not arise from

- 13 -

Aguilera's contacts with Michigan. Not so. First, as a threshold matter, this Court cannot consider Defendant Aguilera's claim as a matter of fact because it directly contradicts Plaintiff's allegation that he was "ultimately terminated by Aguilera." ECF No. 20 at PageID.128; *see Malone*, 965 F.3d at 505–06. But even if considered and taken at face value, Defendant Aguilera's point is misplaced and does nothing to undermine Plaintiff's *prima facie* case of personal jurisdiction. As discussed, Plaintiff's discrimination claim involves more than his termination, and Defendant Aguilera has not alleged—let alone supported—that his contacts with Michigan did not involve, for example, Plaintiff's alleged discriminatory client shuffle. *See generally* ECF Nos. 17; 21. And although Aguilera may not have made the ultimate decision to terminate Plaintiff's employment, he still may—as fairly alleged in Plaintiff's complaint—have participated in this decision based on his supervision of Plaintiff's work performance. *See* ECF No. 4 at PageID.23 (alleging "Defendants" collectively fired Plaintiff pretextually for cited "poor performance" after their alleged discriminatory "client shuffle"). This satisfies the "lenient" test that Plaintiff's claims arise out of Aguilera's contacts with Michigan. *See Bueno v. Eurostars Hotel Co., S.L.*, No. 21-CV-535 (JGK), 2022 WL 95026, at *5 (S.D.N.Y. Jan. 10, 2022) (finding in-state plaintiff's discriminatory termination claim sufficiently arose from out-of-state individual defendant's contacts with form though his remote supervision and oversight of plaintiff's work, even when plaintiff could not show the individual defendant made the ultimate decision to terminate).[5]

---

[5] Confusingly, in the section of his motion addressing this "arising out of" due process requirement, Defendant Aguilera cites *Calder v. Jones*, 465 U.S. 783, 790 (1984) for the proposition that courts cannot attribute an *employer's* contacts with the forum to that of their *employees*. ECF No. 17 at PageID.101–02. But *Calder* additionally held that a defendant's "status as [a] employee[] does not somehow insulate [hi]m from jurisdiction," and courts must assess each defendant's contacts with the forum individually. *Calder*, 465 U.S. at 790. This Court does precisely that. This Court is not concluding, for example, that it has *prima facie* personal jurisdiction over Defendant Aguilera solely because he worked for InContact. Instead, this Court holds that Plaintiff has shown a *prima facie* case that *Defendant Aguilera*'s unique and specific contacts with Michigan—through at least

In sum, read in a light most favorable to Plaintiff, the specific facts recited by Plaintiff's Amended Complaint and affidavit show that his discrimination claims sufficiently arose from Defendant Aguilera's regular, remote supervision of Plaintiff's work in Michigan. The second prong of due process is thus satisfied to afford this Court specific personal jurisdiction.

c.

Lastly, this Court must assess whether Defendant Aguilera had a "sufficiently substantial connection" to Michigan "such that the exercise of jurisdiction is []reasonable." *Schneider*, 669 F.3d at 703. "In determining whether the exercise of jurisdiction is reasonable," courts consider the following factors: "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing [an] efficient resolution[.]" *Air Prods.*, 503 F.3d at 554–55; *Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*, 480 U.S. 102, 113 (1987).

Plaintiff has alleged sufficient specific facts to present a *prima facie* case that this Court's exercise of personal jurisdiction over Defendant Aguilera is reasonable. Indeed, "where, as here, the first two" due process requirements are met, "'an inference of reasonableness arises' and 'only the unusual case will'" result in unreasonableness. *Id.* at 554 (quoting *Theunissen*, 935 F.2d at 1461); *see also First Nat'l Bank of Louisville v. J.W. Brewer Tire Co.,* 680 F.2d 1123, 1126 (6th Cir.1982). And Defendant has not "put forward" any "considerations . . . to overcome or contradict th[is] inference." *Air Prods.*, 503 F.3d at 555. Michigan has a strong interest in protecting "Michigan-based employees," *MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 904 (6th Cir.

---

40 routine, ongoing, weekly supervisory meetings to discuss Plaintiff's work in the state—are sufficiently connected to Plaintiff's discrimination claims. As the defendants in *Calder*, Defendant Aguilera is fairly alleged to be a "primary participant in an alleged wrongdoing intentionally directed at a [Michigan] resident, and jurisdiction . . . is proper on that basis." *Id.*

2017). Plaintiff—a lifelong Michigan resident who InContact expressly hired to work as a remote employee from Michigan—has an equally strong interest in obtaining in-state relief, *Cohn*, 839 F.2d at 1170, and Defendant has not proposed an alternative forum. Although "[i]t may be burdensome for [Defendant Aguilera] to defend a suit in [Michigan], . . . he knew," or should have known, that "he was making a connection with [Michigan]" through his regular remote supervision of Plaintiff's in-state work and the commission he received from the same. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1268 (6th Cir. 1996). Indeed, the very remote communication capabilities Defendant Aguilera used to contact Plaintiff in Michigan during his tenure at InContact lessen his burden in defending a lawsuit here. *See Burger King*, 471 U.S. at 474 (noting "modern transportation and communications have made it much less burdensome form a party sued to defend himself in a State where he engages in economic activity" such that "it usually will not be unfair to subject him to the burdens of litigating in another form disputes relating to such activity" (internal quotations omitted)).

In sum, Plaintiff has shown specific facts supporting a *prima facie* case that this Court's limited personal jurisdiction over Defendant Aguilera comports with the Michigan Long Arm Statute, MICH. COMP. LAWS § 600.705(1), and the federal due process doctrine. Accordingly, Defendant Aguilera's Motion to Dismiss for lack of personal jurisdiction will be denied. But because this decision is based on the Parties' papers, and all facts have been construed in a light most favorable to Plaintiff, Defendant Aguilera is free to "further contest the issue of personal jurisdiction" after discovery and at the summary judgment stage. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 893 (6th Cir. 2002).

## IV.

Accordingly, it is **ORDERED** that Defendant Aguilera's Motion to Dismiss, ECF No. 17, is **DENIED.**

**This is not a final order and does not close the above-captioned case.**

Dated: January 14, 2025           s/Thomas L. Ludington
                                   THOMAS L. LUDINGTON
                                   United States District Judge